## J. V. Doss v. The State.

*No. 6841.  Decided May 14.*

1.  **Practice—Qualification of a Grand Juror.**—Objection to the qualification of a person proposed to be impaneled as a grand juror can be made by challenge, and in no other manner. The intimation in Woods's case, 26 Texas Court of Appeals, 490, that such an objection can be raised by motion to set aside the indictment is a mere *dictum;* or at all events is not the law. Subdivision 2 of article 523 of the Code of Procedure which provides that a motion to set aside an indictment upon the ground that a person not authorized by law was present when the grand jury were deliberating upon the accusation against the defendant, etc., applies only to persons who were not impaneled as grand jurors.

2.  **Theft—Possession—Charge of the Court—Variance.—**Indictment alleged the possession of the stolen cotton to be in P. R. King. The proof showed that King delivered to Shaffer, at Shaffer's gin, a quantity of cotton to be ginned and baled; that having ginned and baled it, Shaffer piled it with other cotton in his gin yard; that a few days before the alleged theft King, as a precaution against fire, caused his said cotton to be removed from where placed by Shaffer to another place designated by him, from which last named place the cotton was taken. *Held,* that the proof established the possession as alleged, and constituted no variance between *allegata* and *probata.* See the statement of the case for charge of the court on this branch of the case, *held,* correct.

3.  **Same—Evidence.—**The defendant was permitted to testify in his own behalf that he obtained the cotton from one Shelton, who claimed to own it, but was not permitted to testify to statements about the cotton made to him by Shelton at the time he received it from Shelton. *Held,* that the exclusion of the proposed evidence was error, the said statements being *res gestæ* as a part of the transaction affecting the defendant's claim of innocent possession.

4.  **Same—Charge of the Court.—**See the statement of the case for a charge of the court upon the issue as to the manner in which the defendant acquired possession of the property, *held* erroneous; and see the same for a requested instruction on that issue, and for a requested instruction upon the question of identity of the cotton recovered with that stolen, which, presenting correct principles of law, should have been given.

Appeal from the District Court of Ellis.  Tried below before A. A. Kemble, Esq., Special Judge.

This conviction was for the theft of a bale of cotton, valued at more than twenty dollars, the property of P. R. King. The penalty assessed against the appellant was a term of two years in the penitentiary.

P. R. King testified for the State that prior to December 1, 1883, he sent a quantity of cotton in the seed to Shaffer's gin to be ginned and baled. The toll being taken out left the witness eight or ten bales, which about December 1, 1883, were piled by Shaffer with other cotton in the gin yard near the gin. A day or two before the theft of the bale involved in this prosecution, the witness, as a precaution against fire, sent his son, John King, to Shaffer's gin, and had his said eight or ten bales removed from the place where Shaffer had piled them to a point across a branch about fifty yards farther from the gin. The bale of cotton referred to in this indictment was taken from the last named place without the knowledge or consent of witness. Witness lived about twenty-five miles from Waxahachie, and about two miles from Shaffer's gin. Defendant lived in the witness's neighborhood, but disappeared about the time of the theft.

Shaffer, as a witness for the State, corroborated the testimony of King, and stated, in addition, that he was in the town of Italy on the first Monday in December, 1883. He heard on that day of the seizure of a bale of cotton in Waxahachie under suspicious circumstances. He returned to his gin at once, and discovered that a bale of cotton belonging to King had been removed from the place where King had caused it to be piled a day or two before. He at once notified King, who sent his son John and witness to Waxahachie to see about the bale of cotton seized. Bass Williams, of the Waxahachie cotton yards, showed witness a bale of cotton from the end of which the number had been cut. The number being gone, the witness had no means of identifying the bale, and could not testify positively that that bale was the identical bale removed from King's pile of baled cotton. The defendant, for two years prior to the theft, lived about two miles from witness's gin. He disappeared about the time the cotton did, and witness did not again see him until after his arrest, about two years later.

Bass Williams testified for the State that in 1883 he was employed in the Waxahachie cotton yards. Early on the morning of the first Monday in December of that year the defendant brought a bale of cotton to the yard. The witness helped him dump it from the wagon to the platform, and as it tilted over he discovered a piece had been cut from the bagging at the end where the number of the bale is usually placed. Directing the defendant's attention to the cut, the witness told him that there was something wrong about the bale. Defendant replied that the bale was all right, and that the hole was made by the hooking of a cow. Witness then gave defendant a ticket for the bale, and defendant left, going toward the public square. Upon reflection the witness decided that

he made a mistake in giving defendant the ticket. He then went to the square, found the defendant, demanded the return of the ticket, and told him that he was going to have him arrested about the cotton. Defendant returned the ticket to the witness, and proposed to give the bale to witness if he would say nothing about the transaction. At the last term of the court, before which this case was pending, the defendant asked the witness to be easy on him in his testimony.

J. C. Goggins was the first witness for the defense. He testified that he lived on the public road between Waxahachie and Shaffer's gin, about two miles from the gin. Defendant, traveling in a wagon, passed witness's house about 2 o'clock in the afternoon of the first Sunday in December, 1883. He then had no cotton in his wagon. He was traveling toward Waxahachie.

The defendant took the stand in his own behalf and testified that he left his home near Shaffer's gin early in the afternoon of the first Sunday in December, 1883, to go to Waxahachie to be present on the following morning at the public sale of estray animals. He camped that night four miles from Waxahachie, and drove into town early in the morning. The first thing he did on reaching town was to enter a saloon to get a drink. In that saloon he encountered a shabbily dressed man who said that his name was Shelton. Witness gave Shelton a drink, and the two left the saloon together. After leaving the saloon Shelton told witness that he had a bale of cotton in town which belonged to him, Shelton. Witness took that bale of cotton to the wagon yard, and Mr. Bass Williams helped him remove it from the wagon to the platform, and it was then he first discovered that the number had been cut from the end. Witness did not remember telling Williams that a cow hooked the hole in the end of the bale. Soon after witness left the cotton yard Williams came to him and demanded the return of the ticket, and threatened to have him arrested. The witness thereupon returned the ticket to Williams, and fearing arrest got on his horse and went to the house of a relative in the country. Thence, upon the advice of friends, he went to Alabama, where he remained a couple of years. At the end of two years he returned to Texas and settled near Abilene, where he was arrested.

The defendant while on the stand as a witness proposed, but was not permitted, to testify that Shelton claimed to own the cotton and to have raised it, but told him, witness, that he owed certain amounts of money to merchants in Waxahachie and was afraid to take the cotton to the yards himself as the merchants might attach it, wherefore he proposed to pay the witness (defendant) one dollar to take the cotton to the yards and get a ticket for it, believing which story the witness consented, took the cotton to the yard, and was subsequently arrested for the theft.

The charge of the court referred to in the second head note reads as follows: "If the jury believe from the evidence that the defendant, J.

V. Doss, did, in Ellis County, State of Texas, at any time within five years next before the 11th day of March, 1887, fraudulently take from the possession of P. R. King, the owner thereof, a bale of cotton of the value of $20 or over, without the consent of the owner, and with intent to deprive the said owner of the value of the same and to appropriate it to the use and benefit of him, the said defendant, then you will find him guilty and assess his punishment," etc.

The charge of the court referred to in the last head note reads as follows: "If any person other than the defendant took the cotton originally without the aid or encouragement of the defendant, and if afterwards the cotton came into the possession of defendant, even with the knowledge then that it had been so stolen, this would not constitute theft on the part of defendant, and in such case the jury must acquit."

The refused special instructions referred to in the last head note read as follows: "No. 2. In order to convict defendant you must believe from the evidence beyond a reasonable doubt that the defendant took the bale of cotton in question from the possession of P. R. King. If any person other than defendant took the cotton, and said bale of cotton came into the possession of the defendant after the original taking, then you should acquit the defendant, regardless of whether defendant acted in good faith or not, and regardless of whether he knew or not as to whether said bale of cotton had been stolen by another; and if you have a reasonable doubt upon this point you will acquit."

"No. 3. In order to convict in this case you should believe from the evidence beyond a reasonable doubt that the bale of cotton which the defendant had in Waxahachie was the same identical bale of cotton which belonged to the witness P. R. King, and if you have a reasonable doubt on this point you will acquit."

*M. B. Templeton*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

WILLSON, JUDGE.—It was not error to overrule the defendant's motion to set aside the indictment. It was the real purpose of the motion to have the indictment set aside because one of the members of the grand jury that found and presented it was not qualified to serve as a grand juror.

An objection to the qualifications of a person whom it is proposed to impanel as a grand juror may be made by challenge, but in no other way shall such an objection be heard. Code Crim. Proc., art. 377; Willson's Crim. Stats., secs. 1901, 1902; see also Owens v. The State, 25 Texas Ct. App., 552.

In Woods v. The State, 26 Texas Court of Appeals, 490, there is an intimation that such an objection may be made and considered under arti-

cle 523 of the Code of Criminal Procedure, by motion to set aside the indictment, as was attempted in this case.   That intimation, however, is a mere *dictum*, the question not being directly involved in the case, or its consideration and decision necessary.   Our conclusion now is, after mature consideration, that subdivision 2, of article 523, of the Code of Criminal Procedure, refers and applies only to persons who were not impaneled as grand jurors, and that it can not be invoked for the purpose of presenting an objection to the qualification of a grand juror.   If we were to hold otherwise, the manifest purpose of article 377 of the Code of Criminal Procedure, in providing that such objection might be made by challenge, but in no other manner, would be defeated.   That purpose was to make the impaneling of the grand jury, when no challenge had been interposed, conclusive of the qualifications of the members of that body, and of its legality.

With respect to the possession of the cotton, we think the charge of the court was correct, and that there was no variance between allegation and proof.   We think the evidence shows that the possession of the cotton at the time of the alleged theft was in the owner King.   If it had been destroyed after having been removed by King from the gin to a place of his own selection, the loss would have fallen upon him.   It was under his care, management, and control after being removed from the gin.

We are of the opinion that the conversation to which the defendant proposed to testify, between Shelton and himself, was *res gestæ*—a part of the transaction of defendant coming into possession of the cotton innocently, as he claims, and that the court erred in refusing to permit him to detail said conversation.   As to the credibility of the defendant's testimony, or the weight to be accorded it, that was a matter for the consideration of the jury.   Ward v. The State, 41 Texas, 612.

Special charge No. 2 requested by the defendant states the law applicable to the facts upon the issue as to the manner of defendant's acquisition of the possession of the cotton, and should have been given instead of the charge upon that issue which was given, because the charge given is in some essentials inaccurate, and calculated to mislead unprofessional minds.

It would have been very proper for the court to have given special instruction No. 3 requested by the defendant as to the identity of the alleged stolen cotton with the cotton traced to the defendant's possession. It devolved upon the prosecution to establish such identity beyond a reasonable doubt, and considering the uncertainty of the evidence upon this very material point, we think the court should have given said special instruction.

. No exceptions were reserved to the charge of the court, nor of the refusal of the court to give the special instructions above mentioned, and if no other errors than those relating to the charge were apparent we

might not disturb the conviction. But considering the case as a whole, we think the errors we have discussed require that the judgment should be reversed, that the defendant may have another trial in which all his legal rights will doubtless be accorded him.

*Reversed and remanded.*

Judges all present and concurring.